Filed 5/17/22  P. v. Robinson CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B312651 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA008895) |
| v. | |
| ERIC FRANK ROBINSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jesse I. Rodriguez, Judge.  Reversed and remanded with directions.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Michael J. Wise, Deputy Attorneys General for Plaintiff and Respondent.

————————————

Eric Frank Robinson appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1170.95[1] as to his 1994 conviction of felony murder. The People concede and we agree the superior court erred in failing to appoint counsel for Robinson and in engaging in premature factfinding in concluding Robinson was ineligible for relief without issuing an order to show case and holding an evidentiary hearing. We reverse the order denying Robinson's petition and remand with directions for the superior court to appoint counsel for Robinson, issue an order to show cause, and conduct further proceedings pursuant to section 1170.95, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Evidence at Trial*

We summarized the evidence at trial in our opinion in *People v. Brooks, et al.* (Dec. 23, 1996, B085183) [nonpub. opn.] (*Brooks, supra*, B085183) (footnote omitted):

"[Roberta] Brooks and Robinson were involved in a fraudulent scheme to obtain student loan funds. They recruited individuals to lend their names to false student loan applications to attend a trade school. When the student loan was approved, Robinson would receive the check at the school. The check was then given to the 'student' to cash and the proceeds distributed among the various individuals involved in the scheme. Besides Robinson and Brooks, participants in the scheme included James Coulter, two sisters, Denisa and Latisha Jones, and J'Neane Griffie.

---

[1]     All undesignated statutory references are to the Penal Code.

"Griffie recruited Rachel Jones to act [as] an applicant for a student loan.  When Robinson received a $4,000 loan check payable to Rachel he instructed her to cash the check and bring the proceeds to him at a motel room.  Rachel, accompanied by Griffie, cashed the check but before the two women could get to the motel they were robbed.  Griffie called the motel room to report the robbery and spoke to Denisa who was waiting there for the money along with Latisha, Coulter, Robinson and Brooks.  Denisa told Griffie and Rachel to come to the motel to explain what happened.

"When Griffie and Rachel arrived at the motel room, Robinson met them at the door with a gun in his hand.  He grabbed the women, threw them to the floor and started hitting them with wire coat hangers shouting 'Where's the money?'  Griffie told Robinson she and Rachel had been robbed.  Latisha, who lived in the motel room, told Robinson and Coulter to leave because she was afraid someone might call the police.

"After Robinson and Coulter left, Latisha and Denisa told Griffie and Rachel the men had stripped them and taken their jewelry.  They wanted Griffie and Rachel to go with them to find Robinson and Coulter and get their jewelry back."

The four women and Brooks got into two cars and drove off to find Robinson and Coulter.  After driving around, they learned Robinson and Coulter were at a motel in Lynwood.  The women went to the motel room.  Once inside, the four women were forced to engage in various sex acts with each other and Robinson, Coulter, and Brooks.  Robinson and Coulter then allowed Denisa and Latisha to leave, and the men told Griffie and Rachel to get dressed.  Coulter gave his gun to Brooks and told her to watch Griffie and Rachel while he talked to Robinson.  Brooks pointed the gun at Griffie and Rachel and asked if they loved each other and whether they were ready to die.  Coulter then told Griffie

3

and Rachel to forget what had happened in the motel room and not to go to the police. Griffie and Rachel promised to obey his instructions. Robinson led Griffie outside while Brooks continued to guard Rachel.

Brooks gave the gun to Robinson, and Brooks cleaned the room of fingerprints and other evidence. Brooks, Robinson, and Rachel then left the hotel room and walked to Robinson's car. Coulter was already sitting in the front passenger seat, and Griffie was in the back seat. Robinson and Brooks pushed Rachel into the trunk and closed it. Robinson drove away, with Brooks and Coulter in the front seat and Griffie in the back. Robinson started to drive toward Latisha's motel, but Coulter pointed or gestured with the gun at Robinson and directed Robinson to drive in a different direction.

After driving for some time, Robinson stopped the car in a dark, vacant lot in Compton. Robinson let Rachel out of the trunk and said in a kind voice, "Come on with me, honey: Don't worry about nothing." Rachel pleaded for her life, but Robinson told her to kneel down. Robinson then brought Griffie over and told her to kneel next to Rachel. While Rachel was starting to pray, Coulter shot her. Then Griffie started screaming, and Coulter shot her. The two men and Brooks drove away. Griffie died of a gunshot wound, but Rachel survived.

B.   *The Verdict and Appeal*

The jury convicted Robinson of the first degree murder of Griffie (§ 187), the attempted murder of Rachel (§§ 187, subd. (a), 664), and multiple sex crimes.[2] The jury found true the special

---

[2]   At our request, the Attorney General's office submitted the jury instructions from the trial. On our own motion we take

circumstance the murder was committed in the commission of a kidnapping (§190.2, subd. (a)(17)). The jury also found true as to the murder and attempted murder counts that Robinson was armed with a firearm (§12022, subd. (a)(1)). The jury convicted codefendant Brooks of rape and other sex crimes. (*Brooks, supra*, B085183.)

On appeal, we reversed the kidnapping special circumstance and otherwise affirmed the judgment as to Robinson. (*Brooks, supra*, B085183.) In reversing the special circumstance, we concluded, "The one reasonable inference is that while in the motel room Robinson and Coulter formed the intent to kill Griffie and Rachel and transporting them to an isolated location was 'merely incidental' to the murder." (*Ibid*.) In 2017, after resentencing, the superior court sentenced Robinson to 26 years to life in state prison.

C.     *Robinson's Petition for Resentencing*

On March 22, 2021 Robinson, representing himself, filed a petition for resentencing and supporting declaration seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Robinson declared his "first degree murder conviction was based on a theory of felony murder and/or a theory of murder under the natural and probable consequences doctrine" and he "could not now be convicted of first or second

---

judicial notice of the jury instructions. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) The trial court instructed the jury on felony murder, but not the natural and probable consequences doctrine.

5

degree murder because of the changes made to Penal Code sections 188 and 189, made effective on January 1, 2019, pursuant to Senate Bill 1437." He stated he was not the actual killer and did not act with the intent to kill. Further, he was not a major participant in the felony or did not act with reckless indifference to human life. Robinson requested the court appoint him counsel during the resentencing process. Robinson attached multiple exhibits to his petition, including the felony complaint and the verdict form on the murder count.

On April 26, 2021 the superior court summarily denied the petition without appointing counsel for Robinson, finding Robinson was not eligible for relief as a matter of law. The court relied on our opinion in *Brooks, supra*, B085183, explaining we found the evidence "was sufficient to support a finding of specific intent to kill." The court noted that on appeal we found Robinson and Coulter had a motive to kill Griffie and Rachel, and cited our finding in the context of the kidnapping special circumstance that "the one reasonable inference" was that in the motel room Robinson and Coulter formed the intent to kill Griffie and Rachel.

Robinson again appealed.

## DISCUSSION

A. *Senate Bill No. 1437 and Senate Bill 775*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848.) The legislation also provided a procedure in new section 1170.95 for

an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*Lewis*, at p. 959; *Gentile*, at p. 847.)[3]

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1170.95, subdivision (b)(3). Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (See § 1170.95, subd. (c).) Where a petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).)

---

[3] Section 1170.95, subdivision (a), as amended by Senate Bill No. 775, now provides for relief where the petitioner was convicted of "attempted murder under the natural and probable consequences doctrine" and "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a) & (a)(3).) Robinson does not seek resentencing as to his attempted murder conviction.

Appellate opinions are generally part of the record of conviction, but as the Supreme Court in *Lewis* cautioned, the opinion "'might not supply all the answers.'" (*Lewis, supra*, 11 Cal.5th at p. 972.) Further, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Ibid.*) Rather, at the prima facie review stage, the court's review is limited to "'readily ascertainable facts'" in the record. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

B.     *The Trial Court Committed Prejudicial Error in Denying Robinson's Petition for Resentencing Without Appointing Counsel and Issuing an Order To Show Cause*

Robinson contends, the People concede, and we agree the trial court erred in failing to appoint counsel for Robinson and summarily denying his petition based on the factual findings in our opinion in *Brooks, supra*, B085183. As discussed, under *Lewis, supra*, 11 Cal.5th 952, once a petitioner files a facially sufficient petition under section 1170.95 and requests appointment of counsel, the superior court must appoint counsel before performing a prima facie review under section 1170.95, subdivision (c). (*Lewis*, at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon filing of a compliant petition"].) The amendments to section 1170.95 under Senate Bill 775 likewise provide for appointment of counsel at the prima facie review stage. (§ 1170.95, subd. (b)(3).) Under *Lewis* and Senate Bill 775, therefore, it was error for the trial court to deny Robinson's petition for resentencing without first appointing counsel.

8

Further, as the People concede, there is nothing in the record that shows Robinson was necessarily convicted as a direct aider and abettor or of felony murder based on a theory he was a major participant in the kidnappings and sex crimes and acted with reckless indifference to human life. The superior court's reliance on our conclusions in the context of reversal of the kidnapping special circumstance is improper factfinding not appropriate at the prima facie stage of review. (*Lewis, supra*, 11 Cal.5th at p. 972; *People v. Duchine, supra*, 60 Cal.App.5th at p. 815.) Accordingly, the superior court's error was not harmless. (See *Lewis*, at p. 974 ["[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'"].)

## DISPOSITION

The order denying Robinson's petition for resentencing under section 1170.95 is reversed. We remand with directions for the superior court to appoint counsel for Robinson, issue an order to show cause, and conduct further proceedings in accordance with section 1170.95, subdivision (d).

FEUER, J.

We concur:

PERLUSS, P. J.          SEGAL, J.

9